FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA V.,[1]

          Plaintiff,

    v.

MARTIN O'MALLEY, the
Commissioner of Social Security,

          Defendant.

No.   4:24-cv-5025-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to back and lower-extremity pain, depression, anxiety, and post-polio myelitis, including left foot drop, Plaintiff Sandra V. appeals the denial of benefits by the Administrative Law Judge (ALJ). Plaintiff asks the Court to reverse the ALJ's denial of Title 2 and Title 16 benefits. This is the second denial of benefits by the ALJ, following a remand by the Ninth Circuit due to a listings-analysis error. On review of the new ALJ decision, the Court finds the ALJ failed to both properly

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

evaluate the opinion from Plaintiff's treating provider and make the required equivalency finding as to Listing 1.18. This matter is remanded for further proceedings, including to obtain testimony from a medical expert specializing in post-polio myelitis.

## I.    Background

In 2016, Plaintiff applied for benefits, claiming disability based on the previously mentioned conditions.[2] She alleges a disability onset date of August 10, 2015, at which time she was 38 years old.[3] After the agency denied benefits,[4] an administrative hearing was held in December 2018 before ALJ Marie Palachuk.[5]

At the hearing, Plaintiff testified that she stopped working in 2011 due to back pain and because her left leg was getting weaker.[6] Plaintiff contracted polio as a young child and has a resulting left leg deformity.[7] Plaintiff shared that she has trouble climbing stairs due to her left leg impairments and so she must use handrails and lead with her right foot and then bring her left foot to the same tread

---

[2] AR 246–64.

[3] AR 246-52, 254-64. *See also* AR 66 (amending disability onset date to August 10, 2015).

[4] AR 144-49, 152-61.

[5] AR 41-72.

[6] AR 56.

[7] AR 46, 99, 1213.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

as her right foot before proceeding to the next tread in the same manner.[8] Plaintiff testified that she has fallen, has trouble walking on uneven surfaces, and gets leg pain and numbness after walking a block.[9] When shopping, she uses a grocery cart to support her weight.[10] She will lie down for at least a half-hour 2–3 times a day to relieve her right leg pain and swelling in her knees.[11] She testified that at the recommendation of her physical therapist, she tries to use the exercise bike but she can only do it for about 5 minutes due to leg pain and fatigue.[12] She has daily back pain, which can proceed down to her leg, making it feel weaker.[13] She shared that she cannot carry much before she feels insecure with her legs.[14] She testified that her 3 children, ages 13, 12, and 7, live with her, and that her 24-year-old daughter comes to help her on the weekends with cleaning tasks that Plaintiff is unable to do, such as cleaning the bathroom or other tasks that require bending or kneeling.[15] She is able to prepare a meal but takes breaks during the process due

---

[8] AR 57–58.

[9] AR 58.

[10] AR 58.

[11] AR 58–59.

[12] AR 59–60.

[13] AR 60.

[14] AR 60.

[15] AR 61.

DISPOSITIVE ORDER - 3

to leg pain and fatigue.[16] She shared that the pain and depression medication can make her dizzy.[17] Her depression waxes and wanes, as it is impacted by her pain levels; she has about 3 "bad" days a week.[18] Plaintiff has a 10th grade education and a CNA certificate.[19]

The next month, the ALJ denied Plaintiff's claims.[20] Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[21] Plaintiff then filed a lawsuit in district court.[22] The Court granted summary judgment in the Commissioner's favor.[23] Plaintiff appealed to the Ninth Circuit. The Ninth Circuit determined the ALJ erred by failing to address Listing 1.02A, and that the ALJ's boilerplate no-listings finding was insufficient given that the ALJ during the listings analysis failed to consider Plaintiff's left knee and ankle impairments or Dr. Morse's opinions that Plaintiff should "avoid even moderate

---

[16] AR 61.

[17] AR 61–62.

[18] AR 62.

[19] AR 64.

[20] AR 21–34.

[21] AR 1-8.

[22] E.D. Wash. No. 4:20-cv-5040-EFS.

[23] AR 909–32.

exposure to uneven terrain" and "is able to ambulate at the sedentary level."[24] Without addressing the other issues raised on appeal, the Ninth Circuit remanded the matter back to the Commissioner to make a new step-three evaluation.[25]

In October 2023, a second administrative hearing was held by telephone before ALJ Palachuk.[26] At the hearing, Plaintiff requested a closed period of disability from August 10, 2015, to July 1, 2020, the date at which she started working part-time, qualifying as substantial gainful activity.[27] Plaintiff testified, but the vocational expert who was present did not testify. Plaintiff testified that during the at-issue period she had muscle spasms in her legs, which required her to elevate her legs about 3 times a day until 2020 when she started taking a muscle relaxer and her need to elevate her legs reduced to 1–2 times a day.[28] One of the medications causes some dizziness.[29] She stated that she returned to work in July 2020 as a caretaker, working about 4–5 hours a day 5 days a week; she prepares breakfast, which generally involves heating the food, she drives her client to his

––––––––––––––––––

[24] AR 902–04.

[25] *Id. See also* AR 899–900, 937.

[26] AR 832–41.

[27] AR 793.

[28] AR 836–37.

[29] AR 837.

appointments, and she keeps him company.[30] She is able to take breaks and elevate her legs at will.[31]

After the hearing, the ALJ again issued a decision denying disability and finding:

- Plaintiff met the insured status requirements through December 31, 2016.

- Step one: Plaintiff had not engaged in substantial gainful activity from July 1, 2020, through the date of the ALJ's decision.

- Step two: Plaintiff had the following medically determinable severe impairments: post-polio myelitis, left lower extremity; chronic back pain; obesity; depressive disorder; and anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  > [She] can only stand and walk up to 2 hours in an eight-hour workday. Postural activities can be performed on an occasional basis, except she can rarely climb stairs and never climb ladders, ropes or scaffolds. Further, the claimant would need to avoid all exposure to hazards and walking on uneven ground. From a psychological perspective, the claimant is able to understand, remember, and carry out simple, routine, repetitive tasks and instructions. She is able to maintain

---

[30] AR 837–39.

[31] AR 839.

> concentration, persistence and pace on those tasks for 2-hour intervals between regularly scheduled breaks. She should be in a predictable environment with seldom change and no fast-paced production rate of work. Interaction with the public and co-workers should be limited to superficial, which was defined as non-collaborative with no tandem tasks.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as garment sorter, mail clerk, and final assembler.[32]

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to the testifying opinions of John Morse, MD, and Marian Martin, PhD.

- some weight to the treating opinion of Samantha Price, DPM, and the reviewing opinions of John Gilbert, PhD, and Stacy Koutrakos, PsyD.

- little to some weight to the reviewing opinions of Donna LaVallie, DO, and Gordan Hale, MD.[33]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[32] AR 790–807.

[33] AR 801–03.

1

2

3

not entirely consistent with the medical evidence and other evidence in the record.[34] Likewise, the ALJ gave little weight to the lay statements from Plaintiff's sister and daughter.[35]

Plaintiff timely sought court review of the ALJ's decision.

## II.  Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[36] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[37]

---

[34] AR 798–801.

[35] AR 804.

[36] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[37] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not

1

2

### III.   Analysis

Plaintiff argues the ALJ erred by 1) improperly rejecting the disabling opinion of the treating podiatrist, Dr. Price; 2) failing to follow the Ninth Circuit's directive that the Commissioner determine whether Plaintiff's impairments equal a listing and by neglecting to call a medical expert to determine equivalence; 3) improperly rejecting the testimony of Plaintiff and the lay witnesses; and 4) failing to satisfy step five. The Commissioner argues the ALJ reasonably interpreted the record, including relying on the medical expert testimony of Dr. Morse to find Plaintiff was not disabled during the at-issue closed period, as she could perform light work with a two-hour stand and walk limitation along with additional limitations. Because Plaintiff establishes the ALJ erred when evaluating Dr. Price's treating opinion and by not articulating the no-equivalence finding, this matter is remanded for further proceedings before a different ALJ, who is to take testimony from a medical expert specializing in post-polio myelitis.

### A.   Medical Opinions: The ALJ erred when evaluating Dr. Price's opinion.

Plaintiff argues the ALJ erred by rejecting the disabling medical opinion of treating podiatrist Samantha Price, DPM. In response, the Commissioner argues

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

that the ALJ's reasons for discounting Dr. Price's opinions are specific and legitimate reasons, supported by substantial evidence, and that the ALJ reasonably assigned more (significant) weight to Dr. Morse's opinion. For the reasons given below, Plaintiff establishes error.

1.    Standard

When Plaintiff filed her initial disability applications, a former version of the social-security regulations regarding assessment of medical-opinion evidence applied.[38] The former regulations required that medical opinions be assessed based on the nature of the medical relationship the claimant had with the medical source. When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it can be rejected only for "clear and convincing" reasons, and when it is contradicted, it can be rejected for "specific and legitimate reasons" supported by substantial evidence.[39] A reviewing physician's opinion can be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source can be rejected for specific and germane reasons supported by substantial evidence.[40]

---

[38] 20 C.F.R. §§ 404.1527, 416.927.

[39] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

[40] *Id.*; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

2.    <u>Dr. Price</u>

Beginning in March 2017, Plaintiff sought treatment from Dr. Price for evaluation of her right heel and progressive pain in her right foot and right knee. On examination, Dr. Price observed:[41]

> Vascular - Pedal pulses are palpable to both feet, 2/4 DP/PT pulses.  Capillary fill time <3 seconds 10 digits.  No pedal edema noted.  Skin is warm from distal and moving proximally to the bilateral lower extremities.
> Musculoskeletal:   Muscle strength of the left leg extensors, 1/5.  Left dorsiflexors of the foot 1/5.  Left knee with noted contracture.  Left ankle with restricted ROM, reducible to 90 degrees/-1 degrees.  Right foot with pain of the right lateral plantar foot.  Increased medial longitudinal arch.  No pain with palpation of the right medial plantar calcaneal tuberosity.[64]

Dr. Price also observed tenderness to palpation of the right sub 5th metatarsal head, and increased calcaneal inclination and Meary's angles on lateral view.[42] She assessed Plaintiff with left drop foot, pes cavus of the right foot, and right foot pain. Dr. Price noted concerns with bracing the left foot and knee because Plaintiff has left ankle joint and knee contracture. Dr. Price concluded that Plaintiff needed a KAFO (knee-ankle-foot orthosis) for her left foot, as "[t]here are very real concerns as the patient is a fall risk," and that Plaintiff needed a right foot orthotic to decrease her right foot pain caused by overloading syndrome.[43] Dr. Price prescribed Medrol and Meloxicam.

During the follow-up evaluation two weeks later, Plaintiff reported the medication helped decrease the pain in the right lateral foot, but she had persistent

---

[41] AR 647.

[42] AR 648.

[43] AR 648.

pain, as well as an area of herniation, in the right lateral leg.[44] Dr. Price

observed:[45]

> Vascular - Pedal pulses are palpable to both feet, 2/4 DP/PT pulses.  Capillary fill time <3 seconds 10 digits.  No pedal edema noted.  Skin is warm from distal and moving proximally to the bilateral lower extremities.
> Musculoskeletal:   No pain with eversion of the right ankle.  Right foot with no pain of the right lateral plantar foot.  No pain with palpation of the right medial plantar calcaneal tuberosity.  Tenderness to palpation of the right sub 5th metatarsal head.  Decreased left ankle joint ROM.
> Neurologic:  Light touch is intact to distal toes of both feet.  Positive Tinel's right common peroneal tendon nerve.

Dr. Price noted that Plaintiff was pending the KAFO and that she was "concerned

[Plaintiff] does get irritation with walking," which is the cause of the persistent

right lateral leg pain.[46]

Plaintiff returned a month later for another follow-up. Plaintiff continued to

report pain, as well as a burning sensation in her right foot, worsened with

walking.[47] Plaintiff stated that she had not started physical therapy and that the

orthotic she bought for her right foot did not fit into any of her shoes; she was still

pending her KAFO for her left foot.[48] Dr. Price observed:[49]

---

[44] AR 642.

[45] AR 643.

[46] AR 644.

[47] AR 639.

[48] AR 639–41.

[49] AR 640.

Vascular - Pedal pulses are palpable to both feet, 2/4 DP/PT pulses.  Capillary fill time <3 seconds 10 digits.  No pedal edema noted.  Skin is warm from distal and moving proximally to the bilateral lower extremities.

Musculoskeletal:    No pain with eversion of the right ankle.  No pain of the right lateral plantar foot.  No pain with palpation of the right medial plantar calcaneal tuberosity.    Pain with palpation at the lateral aspect of the foot and ankle overlying the area of the peroneal tendons.    with palpation of the right proximal leg at the level of the peroneal muscle groups.  Decreased left ankle joint ROM.

Neurologic:  Light touch is intact to distal toes of both feet.  Positive Tinel's right common peroneal tendon nerve.

Dr. Price noted Plaintiff's right leg pain may be due to irritation involving the common peroneal nerve branches in the leg, as well as due to compensating for the left leg post-polio symptoms.[50] Dr. Price referred Plaintiff to an orthopedist for the continued right knee and leg pain.[51]

A few months later, in July 2017, Plaintiff returned to Dr. Price for a follow-up.[52] Dr. Price had the same objective findings and assessments as the prior appointment.[53] Plaintiff shared that she was having difficulties wearing the KAFO brace and that her gait was more unsteady trying to wear the brace. Dr. Price recommended she seek assistance from the orthotics company for a brace adjustment and seek formal therapy to work on gait training.[54] As to Plaintiff's

---

[50] AR 641.

[51] AR 641.

[52] AR 636.

[53] AR 637.

[54] AR 638.

DISPOSITIVE ORDER - 13

right leg pain, it was noted that Plaintiff was pending a referral to the orthopedist for an evaluation of possible peroneal nerve entrapment.[55]

On November 15, 2018, Dr. Price completed a Medical Report at the request of Plaintiff's counsel.[56] She lists the dates of treatment from her medical records summarized above and that she treated Plaintiff the date she completed the Medical Report, although her treatment note from November 15, 2018, is not part of the administrative record.[57] She diagnosed Plaintiff with left drop foot, post-polio, and describes Plaintiff's symptoms as left leg weakness, left forefoot pain, foot/leg fatigue, compensatory pain of the right foot due to her weakness of the left leg, and history of right peroneal tendinitis. In response to whether work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, Dr. Price wrote that it is possible that Plaintiff's condition will deteriorate "if the patient has a laboring job in which she must stand or walk for prolonged hours."[58] Dr. Price opined that "it is probable with a laboring task" that Plaintiff would miss 2 days of work on average and that "it is less probable than not with a sedentary

---

[55] AR 638.

[56] AR 658–59.

[57] The record does contain a treatment note authored November 17, 2018, by treating nurse Jessica Almaguer. AR 774–78.

[58] AR 659.

DISPOSITIVE ORDER - 14

job."[59] In response to the question of what percentage of time Plaintiff would likely be off-task during the workweek, Dr. Price selected the lowest option on the form, which was "less than 12%."[60]

### 3. Dr. Morse

Dr. Morse reviewed the record available to him prior to his testimony at the 2018 hearing. Dr. Morse testified that Plaintiff's primary impairment was post-poliomyelitis syndrome and chronic low back pain; Dr. Morse acknowledged that Plaintiff had a problem with her right lower extremity due to overuse but stated that such was not an ongoing problem.[61] He opined that Plaintiff would not meet or equal a listing.[62] He limited Plaintiff to sedentary work (sitting 6 hours of the workday, and standing and walking 2 hours of the workday), found that she could lift 10 pounds on a frequent basis and 20 pounds occasionally, but later mentioned that maybe Plaintiff should be limited to 10 pounds carrying.[63] He recommended that Plaintiff avoid ladders, ropes, and scaffolds, with the remainder of the posturals, stairs, and ramps limited to occasional. He recommended limited exposure to uneven terrain: "[s]he should avoid uneven terrain, avoid even

---

[59] AR 659.

[60] AR 659.

[61] AR 46–47.

[62] AR 48.

[63] AR 48–50.

moderate exposure to uneven terrain."[64] He noted that Plaintiff's left leg was weak and that he was considering her reports of pain when recommending sedentary work.[65]

    4.   <u>ALJ's Evaluation of Dr. Price's and Dr. Morse's Opinions</u>

The ALJ gave "some weight" to Dr. Price's opinion because it was supported by Dr. Price's physical examinations and was "relatively consistent with the sedentary walking/standing limitations opined by Dr. Morse."[66] The ALJ then discounted Dr. Price's opinion because 1) it was "very vague, non-specific, and unquantifiable," and 2) Dr. Price was "a podiatrist, not a medical doctor or psychologist, and as such, the undersigned finds that her opinion is beyond her area of expertise."[67] The ALJ gave two reasons for why the opinion was vague, non-specific, and unquantifiable: 1) the "'less than 12%' off-task opinion represent[s] a broad functional range," and 2) the opinion that Plaintiff would miss 2 days of work per month with a laboring task, and fewer days with a sedentary job, was not vocationally specific.[68]

---

[64] AR 50, 48.

[65] AR 50–52.

[66] AR 803.

[67] AR 802.

[68] AR 802.

1

2

3

In comparison, the ALJ gave "significant weight" to Dr. Morse's opinion because he was able to review 1) the entire longitudinal record on which his opinion was based, and 2) he was subject to cross-examination.[69]

4

### 5.    Review and Analysis

5

6

7

8

9

10

As summarized above, Dr. Price observed reduced range of motion and pain in Plaintiff's lower extremities due to post-polio left foot drop and related overcompensation with Plaintiff's right lower extremity. Dr. Price's observations are similar to those in the March to May 2017 patient notes from Enoch Heileson, LCO, with TriCities Orthotics & Prosthetics.[70] Orthotist Heileson's March 2017 treatment note states that Plaintiff:

11

12

13

14

15

> exhibits LT foot drop at rest and during ambulation. MMT showed weakness at LLE with 2/5 DF and 3/5 PF, inverters and everters; 2+/5 hip flexors; 3+5 hip extensors; 2/5 knee extensors; and 4/5 knee flexors. Did not observe knee hyperextension during ambulation and she did not c/o this as an issue. She does appear to have minor LT knee flexion cxr. She compensates for LLE weakness by over-utilizing her RLE, which has led to some RT knee and foot pain. She stated that she has fallen several times due to muscular weakness in supporting her knee on uneven terrain.[71]

16

17

18

19

20

[69] AR 801–02.

21

[70] AR 657.

22

[71] AR 657.

23

A KAFO was recommended and plans for casting and creation of the KAFO were made and completed. It was also discussed that Plaintiff should use handrails when using stairs.[72]

The observations of Dr. Price and Orthotist Heileson are consistent with other treating provider observations. For instance, in July 2016, the physical therapist found "considerable difference in muscle bulk and girth" of the left lower extremity compared to the right lower extremity, with reduced lumbar spine lateral flexion and rotation, reduced bilateral hip, knee, and ankle strength, and an antalgic gait pattern with ipsilateral trunk lean with left lower extremity stance and slight circumduction of left lower extremity to advance the left foot.[73] Jessica Almaguer, ARNP, noted on two occasions that Plaintiff's lumbar back exhibited tenderness, pain, and spasms, and her right thigh had enlarged muscle compared

---

[72] AR 657. *See also* AR 386 (April 23, 2014: "Stairs: ascending use of hand railing with altered mechanics particularly when leading with left LE. Descending stairs step over step with use of handrailing with loss of balance as poor left knee control with step down); AR 587 (July 19, 2016: "Steps: Reciprocal pattern with use of B handrail, difficulty for pt to unlock L knee out of extension and use of UE to facilitate eccentric flex of the L knee with coming down the stairs.").

[73] AR 586–87.

to the left extremity while the left extremity had muscle atrophy and decreased strength and sensation.[74]

Additionally, treatment records indicate pain and reduced range of movement in Plaintiff's lumbar, shoulder, and hands. For instance:

- October 28, 2015: "low back tenderness. . . slight decreased range of motion right shoulder." AR 545.

- November 10, 2015: "slight decreased range of motion right shoulder." AR 543.

- January 7, 2016: "lower back tenderness. . . pain on internal and external rotation of the right shoulder." AR 541.

- February 8, 2016: "low back tenderness . . . decreased range of motion right shoulder." AR 540.

- March 8, 2016: "low back tenderness . . . decreased range of motion right shoulder." AR 539.

- August 24, 2016: noting that physical therapy has made "little progress" on her low back pain. AR 572.

- December 29, 2016: "low back tenderness . . . decreased range of motion right shoulder." AR 619.

- June 9, 2017: "diffuse joint pain present in shoulders, feet, ankles, knees, and hands." AR 739.

---

[74] AR 777, 1204.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- August 2, 2017: "diffuse joint pain present in shoulders, feet, ankles, knees, and hands." AR 744.

- September 20, 2017: "Lumbar back: She exhibits decreased range of motion, tenderness, bony tenderness, pain and spasm." AR 747.

- February 14, 2018: "Lumbar back: She exhibits decreased range of motion, tenderness, bony tenderness, pain and spasm." AR 763.

- May 15, 2018: "lumbar back: she exhibits tenderness, bony tenderness, pain and spasm." AR 767.

- August 16, 2018: "Lumbar back: She exhibits tenderness, bony tenderness, pain and spasm." AR 771.

- November 17, 2018: tenderness, pain, and spasm in the lumbar back, and atrophy, abnormal muscle tone, and abnormal reflex in the legs. AR 776–77.

- March 5, 2019: "electro-diagnostic evidence for mild median neuropathy at both wrists, right worse than left (also known as bilateral carpal tunnel syndrome). AR 1208.

- May 15, 2019: numbness in the median innervated digits of the right hand, positive Tinel's over both the right and left carpal canals and a positive carpal tunnel compression test on the right side. AR 1201.

- October 4, 2019: tenderness, pain, and spasm in lumbar back. AR 1196.

Notwithstanding these medical records, there was no questioning of Dr. Morse—or other development of the record—as to whether Plaintiff's pain or fatigue was consistent with post-polio myelitis.[75] Instead, the ALJ highlighted that the x-rays of Plaintiff's right shoulder and right heel were negative, inferentially discounting pain symptoms unrelated to Plaintiff's left-lower extremity because they were not resulting from a condition observable on an x-ray.[76]

Even though the observations and clinical findings support Dr. Price's opinion that Plaintiff's leg impairments would impair her ability to stand and walk, would deteriorate if she had to do a job requiring standing and walking for prolonged hours, and that it was probable that she would miss more work if she had a laboring job rather than a sedentary job, the ALJ discounted Dr. Price's absence and off-task opinions as being vague and unquantifiable without seeking clarification from Dr. Price on these points. Moreover, the ALJ gave more weight to Dr. Morse's opinion because he was available for cross-examination; yet the ALJ

---

[75] *See* NIH, Post-poliomyelitis syndrome, Eric Chun Pu Chu & Kary Ka Wai Lam, Aug. 8, 2019, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6690913/ (last accessed Aug. 9, 2024).

[76] AR 798, 802. *See also* AR 543 (right shoulder and cervical spine x-rays unremarkable); AR 629 (x-rays for right heel and cervical spine revealed no abnormalities); AR 1206 (mild degenerative disc disease in lower lumbar spine and possible acute nondisplaced fracture of the S5).

1
2

did not offer Dr. Price the opportunity to clarify the basis for or quantify her opinions.

3
4
5
6
7
8
9
10

An ALJ may discount an opinion due to vagueness if the opinion is not supported by examination findings.[77]  However, if the opinion is supported by examination findings, the ALJ has a duty to develop the record to clarify any consequential ambiguities either contained in or caused by the opinion before discounting it for vagueness.[78] The ALJ failed to do so here. The record shows objective signs that Plaintiff's ambulation was impacted by her left foot drop and that she endured pain and fatigue due to her need to overcompensate with her right leg/foot. This evidence supports Dr. Price's finding that Plaintiff would

11

---

12
13
14
15
16
17

[77] *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999) (determining that the doctor's opinion that the claimant would have "some" diminution in her concentration skills was conclusory and was not supported by relevant medical documentation); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995) (determining that the doctor's conclusory opinion was not substantiated by relevant medical evidence).

18
19
20
21
22
23

[78] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). *See also* 20 C.F.R. §§ 404.1512, 416.912.

experience pain and fatigue if she regularly worked a laboring job. Instead of discounting Dr. Price's opined off-task opinion because it was "vague, non-specific, and unquantifiable," the ALJ should have developed the record by issuing a subpoena for Dr. Price's appearance or seeking written clarification for an opinion as to the specific percentage of time that Plaintiff would be off-task due to her pain and limitations caused by her post-polio symptoms if limited to a sedentary job. The ALJ then could have asked the vocational expert what percentage of off-task time is work preclusive.

The Court anticipates, based on its review of hundreds of social security cases and vocational-expert testimony therein, that the "less than 12%" off-task option selected by Dr. Price on the form likely encapsulates both workers who can sustain employment and those who cannot sustain employment. However, what specific percentage of time an individual can be off task and still sustain competitive employment is not known on this record because the vocational expert at the 2023 hearing was not asked any questions and the vocational expert at the 2018 hearing was not asked how much off-task time is permitted. The vocational expert at the 2018 hearing was asked whether a person who needed to elevate their legs twice a day for 30 minutes each time on an as-needed basis—which equates to

about 12.5% off-task time—could sustain employment; the vocational expert

testified that such person would not sustain employment.[79]

Instead of seeking to clarify whether Dr. Price's opinion that Plaintiff would

be off task less than 12% of the workday precludes competitive work, the ALJ

simply discounted it for being vague and nonspecific. Yet, none of the medical

sources to whom the ALJ gave more weight to their opinions offered an opinion as

to the specific amount of time that Plaintiff would be off task. For instance,

Dr. Morse did not offer any testimony as to the amount of time that Plaintiff would

be off-task due to her post-polio symptoms.[80] Dr. Martin simply opined that

Plaintiff would be able to maintain her concentration, persistence, and pace on

simple, routine, repetitive tasks for two-hour intervals throughout the workday.[81]

The State agency psychological medical consultants who reviewed the record at the

initial and reconsideration levels opined either that Plaintiff was mildly or

moderately limited in her ability to complete a normal workday and workweek but

regardless she would be able to maintain pace as required for the workweek.[82]

None of these "Plaintiff can sustain employment" opinions are more specific than

---

[79] AR 70. Although a vocational expert was present during the October 2023

hearing, no questions were posed to the vocational expert. AR 832–41.

[80] AR 46–52.

[81] AR 55.

[82] AR 90, 133.

Dr. Price's "less than 12%" off-task opinion. Therefore, the ALJ's decision to discount Dr. Price's off-task opinion because it was "very vague, non-specific, and unquantifiable," without first trying to seek clarification from Dr. Price is not a specific and legitimate reason, supported by substantial evidence, to discount her off-task opinion.

Second, the ALJ's decision to discount Dr. Price's opinion that Plaintiff would miss 2 days of work per month with a laboring job and fewer days with a sedentary job on the grounds that such an opinion is not vocationally specific was not a legitimate basis to discount her opinion, *without* first seeking clarification from Dr. Price. None of the other medical sources provided a specific finding as to how many days of work Plaintiff would miss, instead they generally found that Plaintiff could maintain adequate attendance. Yet, the ALJ did not discount these work-attendance opinions as not being vocationally specific. This failure to develop the record before discounting Dr. Price's opinion was consequential because the vocational expert in 2018 testified that a person who "misses one day of work per month or more at unpredictable times is not likely to maintain employment over time."[83]

Finally, the ALJ discounted Dr. Price's opinion because she is a "podiatrist, not a medical doctor or psychologist, and as such . . . her opinion is beyond her area

---

[83] AR 71.

of expertise."[84] The ALJ did not explain why one of the other medical doctors and psychologists who reviewed the record is more qualified to provide recommended limitations resulting from Plaintiff's symptoms associated with her post-polio leg drop in her left foot and overcompensation with her right lower extremity.[85] The ALJ did not identify that one of the reviewing medical sources was an expert in post-polio symptoms; nor does the administrative record indicate such. On this record, that Dr. Price is a podiatrist is not a specific and legitimate reason, supported by substantial evidence to discount her treating opinion related to Plaintiff's limitations resulting from her post-polio left foot impairment.

The Commissioner argues that any error in evaluating Dr. Price's opinion is inconsequential because the ALJ reasonably relied on the opinion of Dr. Morse, who testified at the 2018 hearing. The Court disagrees. Dr. Price treated Plaintiff on at least four occasions, observing significant limitations in both lower extremities resulting from Plaintiff's post-polio left foot drop. Under the applicable regulations, Dr. Price's treating opinion was to be given more weight than Dr. Morse's reviewing opinion.

---

[84] AR 802–03.

[85] *See* 20 C.F.R. §§ 404.1502(a)(4), 416.902(a)(4) (recognizing that an acceptable medical source is one who is a "[l]icensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle").

On this record, the ALJ's failure to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Price's off-task and work-absence opinions is consequential.

**B.    Step Three (Listings): Plaintiff establishes error.**

Plaintiff argues the ALJ erred by failing to conduct an adequate analysis when finding that Plaintiff's impairments do not meet or equal a listing at step three, namely Listing 1.18 (abnormality of a major joint(s) in any extremity) or Listing 11.11 (post-polio syndrome). The Commissioner argues the ALJ reasonably found that Plaintiff's physical impairments did not meet or medically equal the requirements of these listings.[86]

1.    <u>Standard</u>

If a claimant meets all of the listing criteria, she is considered disabled at step-three. A claimant who does not meet all of the listing criteria may still be considered disabled at step-three if her impairment(s) medically equal a listed

---

[86] Although the Ninth Circuit found that the ALJ erred at step three by failing to address then-Listing 1.02A (major dysfunction of a joint(s)) with respect to Plaintiff's post-polio myelitis, the parties agree that due to the revised criteria in the listings, which became effective April 2, 2021, the ALJ on remand appropriately considered Listing 1.18, rather than 1.02A. *See* 85 FR 78164, n.2.

impairment.[87] Medical equivalence can be established three ways, one of which ways is:

> If an individual has an impairment that is described in the listings, but either:
>
> a. the individual does not exhibit one or more of the findings specified in the particular listing, or
> b. the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> then we will find that his or her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.[88]

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairment(s) meet or equal one of the specified impairments set forth in the listings.[89] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[90]  The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as

---

[87] Soc. Sec. Ruling 17-2p.

[88] *Id.*

[89] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[90] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001). *See also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

the relevant evidence and underlying findings are discussed in the ALJ's decision.[91]

### 2.    ALJ's Findings

The ALJ found that Plaintiff did not meet or medically equal Listing 1.18 because "[t]here is not a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands."[92] The ALJ found that Plaintiff does not have an inability to use one or both of her upper extremities to do fine and gross movements.[93]

The ALJ also found that Plaintiff's symptoms do not meet or medically equal Listing 1.11 for post-polio syndrome because there is "no evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use [of] the upper extremities."[94] In addition, the ALJ found the other Listing 1.11 requirements related to speech, neuromuscular disfunction, physical functioning, and non-exertional abilities were not satisfied.

---

[91] *Lewis,* 236 F.3d at 513.

[92] AR 794.

[93] AR 794–95.

[94] AR 795.

3.    <u>Listing 1.18</u>

Listing 1.18 applies to abnormality of major joint(s) in any extremity and must be documented by: 1) chronic joint pain or stiffness; 2) abnormal motion, instability, or immobility of the affected(s) joints; and 3) anatomical abnormality of the affected joint(s) as noted on physical examination or imaging; and 4) an impairment-related physical limitation of musculoskeletal functioning that has lasted (or is expected to last) for at least 12 months and medical documentation of at least one of the following:

- "A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands"; or

- "An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements;  *and* a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand"; or

- "An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements."[95]

---

[95] Listing 1.18.D (internal citations omitted).

Plaintiff argues that the ALJ did not explain her finding that Plaintiff did not *equal* Listing 1.18, which was error particularly because the Ninth Circuit directed the ALJ to reevaluate the listing analysis and the ALJ failed to call a medical expert for an opinion as to whether Plaintiff's need to avoid walking on uneven terrain would be equal to Listing 1.18's final requirement. Plaintiff maintains that Dr. Morse's testimony that she is unable to ambulate on uneven terrain and the ALJ's own RFC finding that Plaintiff "avoid all exposure to . . . walking on uneven ground" shows that Plaintiff equals all elements of Listing 1.18 for the alleged closed period.

The Commissioner counters that the ALJ reasonably found that Plaintiff did not meet the requirements of Listing 1.18 and that the ALJ was not required to call a medical expert to make the equivalence determination for two reasons. First, the ALJ may make the equivalence determination without relying on medical-expert testimony. Second, substantial evidence supports the ALJ's finding that Plaintiff did not equal Listing 1.18 because Dr. Morse's opinion and the RFC avoidance of walking on uneven ground is not akin to the use of bilateral crutches.

The Commissioner is correct that an ALJ need not typically call a medical expert to determine whether an individual's impairment(s) meet or medically equal a listing: "To assist in evaluating this issue, adjudicators at the hearing level *may* ask for and consider evidence from medical experts (ME) about the individual's

impairment(s), such as the nature and severity of the impairment(s)."[96] The closer question though, given the Ninth Circuit's directive, is whether the ALJ's non-equivalence finding is supported by substantial evidence without the testimony from a medical expert in this case. The Ninth Circuit remanded this matter for the ALJ to "sufficiently reveal her reasoning with respect to Listing [1.18] to allow [the court] to evaluate it for substantial evidence."[97]

There appears to be no dispute that Plaintiff meets the first three requirements of Listing 1.18. Instead, the parties dispute whether Plaintiff equals the final Listing 1.18.D requirement, which looks to whether both of the individual's upper hands are unavailable to perform fine and gross work tasks either because the individual's hand(s) are impaired or because the individual's hand(s) are occupied by a crutch, cane, etc. Plaintiff's argument is essentially that, by restricting any walking on uneven terrain, the ALJ found that Plaintiff would need to walk with canes, crutches, or a walker if she were to walk over uneven terrain, and that the medical evidence also shows a need for Plaintiff to use bilateral handrails when navigating stairs, thereby "equaling" Listing 1.18.D.

On this record, there is sufficient ambiguity between the ALJ's RFC finding and the ALJ's boilerplate no-equivalence finding for Listing 1.18.D. The objective medical evidence shows that Plaintiff has left foot drop, atrophy and reduced

---

[96] SSR 17-2p (emphasis added).

[97] AR 904.

strength in her left thigh, and tenderness/pain in her right foot and leg; she was recommended to use bilateral handrails on stairs; and Dr. Morse opined that Plaintiff's ability to carry while walking was limited and that she should avoid even moderate exposure to walking on uneven surfaces. The ALJ is to reevaluate whether Plaintiff equals Listing 1.18 on remand.

## C.    Other Challenges

Because of the ALJ's above-discussed consequential errors, the Court need not analyze Plaintiff's remaining claims pertaining to Listing 11.11 or the ALJ's discounting of Plaintiff's symptom reports and her relative's lay statements.

### IV.    Conclusion

Plaintiff establishes the ALJ erred. Plaintiff seeks a remand for payment of benefits. However, at this time, further proceedings on remand are necessary. A different ALJ is to develop the record, including obtaining testimony from a medical expert specializing in post-polio myelitis, and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**. A different ALJ is to be assigned to this matter.

//

/

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

DATED this 14th day of August 2024.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 34